UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRUCE LEWIS,

                    Plaintiff,

        -against-

WESTCHESTER COUNTY, ARAMARK
CORPORATION, GLOBAL TEL-LINK D.B.A
ADVANCEPAY SERVICE CORRECT CARE
SOLUTIONS, LLC, CAPTAIN ABRAMS,

                    Defendants.

18-CV-04086 (NSR)
OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/14/2020

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Bruce Lewis ("Plaintiff" or "Lewis"), proceeding *pro se*, commenced this action on May

21, 2018 pursuant to 42 U.S.C. § 1983 against Defendants Westchester County Jail ("WCJ"), Aramark

Correctional Services, LLC ("Aramark"), Correct Care Solutions, LLC ("CCS"), Global Tel-Link d..b.a.

Advancepay Service ("Global"), and Captain Abrams. Plaintiff asserts claims as a pretrial detainee

sounding in alleged 1) inadequate nutrition (food) in violation of the Eighth and Fourteenth Amendments;

2) inadequate law library and insufficient time to review trial materials in violation of the Sixth

Amendment;[1] and 3) interference with religious freedom claims in violation of his First Amendment

rights.

        Presently before the Court are Defendants WCJ and Aramark's motions, pursuant to Federal Rule

of Civil Procedure 12(b)(6) ("Rule 12(b)(6)," to dismiss all claims asserted against them due to

Plaintiff's failure to allege plausible claims. (ECF No. 30 and 37.) The motions are unopposed. For the

following reasons, Defendants' motions are GRANTED without opposition.

---

[1] Plaintiff's Sixth Amendment claims, which appear to be asserted against WCJ and CCS only,
allege he was not given enough time to review his trial materials or legal resources to conduct
research and unable to afford counsel of his choice. (*See* Compl.)

1

**BACKGROUND**

The following facts are taken from Plaintiff's Complaint and are accepted as true for the purposes of this motion. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

Plaintiff is a sixty-six-year-old, type two diabetic, pre-trial detainee at WCJ awaiting trial. (ECF No. 1, Compl. pg. 4A.) CCS is WCJ's medical service provider, Aramark is WCJ's food service provider, and Captain Abrams is a supervisor at the WCJ. (*Id*. at pg. 4A-4G.) Plaintiff arrived at WCJ on December 21, 2016, and has been detained since.  Plaintiff alleges he requested and did not receive a dietetic food tray until eight months later. (*Id*. at pg. 4A.) When he did receive the dietetic tray, it was inadequate because it contained "soy, carbs, and starches," which he is allergic to. *(Id.)* Because of the food he consumed at the facility, he experienced a variety of dietetic symptoms such as blurred vision and numbness in his limbs, and was forced to take insulin for the first time.[2] (*Id*.) Due to his impaired eye sight, Plaintiff was unable to thoroughly read portions of discovery material related to his pending criminal case. (*Id*.) Due to the poor nutritional meals served at the WCJ, Plaintiff was forced to buy food from the commissary at very high "outrageous prices." (*Id.* at pg. 4D-4F.)

Plaintiff purportedly complained to unidentified CCS staff members who informed that in order to receive a "nutritious diet" he would have to convert to Judaism. (*Id.* at pg. 4C.) Multiple Jewish inmates, though, told Plaintiff that the  "Muslim diet" was healthier. (Id. ) Plaintiff, who was baptized as a Lutheran, opined that converting to Judaism would upset "his family and friends."(Id. at pg. 4E.)  Plaintiff does not allege that he converted to Judaism.

Plaintiff also alleges that his bed, consisting of a steel frame and mattress, was inadequate,  caused him to lose sleep and suffer scratches and cuts. (*Id.* at pg. 4C.) Despite making multiple request to CCS, he was denied an additional mattress. (*Id*.) Due to his high sugar levels, the scratches and cuts did not heal well. (*Id*.) Plaintiff alleges that his cell was routinely "extremely cold at night," and the heating was inadequate with the exception of a few nights. (*Id.* at pg. 4E.) Without any specificity,  Plaintiff alleges that WCJ has an inadequate grievance program. (*Id.* at pg. 4C.) Nor does Plaintiff assert that he attempted to avail himself to the grievance process.

During his detention, Plaintiff sought to review discovery material related to his pending criminal trial but was given very little time. (*Id*. at pg. 4A.) Plaintiff's request for additional time was denied by an unidentified Sergeant and Captain Abrams, who both indicated "that's not how it's done here at

---

[2]Plaintiff does not allege that he was denied medical treatment for his diabetes and/or related symptoms.

Westchester County." (*Id*.) Plaintiff also alleges he was not given adequate access to the library and  that the library was lacking in relevant research material to aid him in preparing for his defense. (*Id*.)  For example, Plaintiff alleges that law library did not have research materials on the Uniform Commercial Code which he believed was relevant to his criminal action. (*Id.* at pg. 4C.) Plaintiff also alleges he was not permitted to print discovery materials and that WCJ has a limit of "$5,000 for one's books." Plaintiff links the monetary limit on books to his inability to post bail, and/or ability to retain the services of a bail bonding company, or hire counsel of his choice. (*Id*. at pg. 4B.)

Plaintiff asserts that the "phone services at WCJ are unlawful" because the fee to make an outside call is "prohibitively high." Plaintiff, however, does not state what the actual cost are nor whether he was prevented from making calls due to the cost. Plaintiff asserts that privileged communications, such as attorney-client phone calls are monitored. (Id. at pg. 4E.) Notably, Plaintiff does not give any particular instances in which he in-fact called his attorney and his phone discussion was actually monitored.

Though Plaintiff asserts that WCJ, CCS, and Aramark were all acting in concert, he provides no particulars. He also alleges that the Defendants failed to properly train, hire, and supervise its employees. Of significance, he fails to indicate which employee(s) was improperly or negligently hired and why, instances in which he observed an employee perform a task improperly such that it affected a constitutional right, or instances in which an employee was not properly supervised.

## LEGAL STANDARD

### Rule 12(b)(6)

When deciding a motion to dismiss pursuant to Rule 12(b)(6), dismissal is proper unless the complaint "contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The court "takes all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). In his pleadings, a plaintiff must show "more than a mere possibility that a defendant has acted unlawfully," and cannot rely on mere "labels and conclusions" to support a claim. *Twombly*, 550 U.S. at 570.  A motion to dismiss will be denied where the allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged*." Iqbal*, 556 U.S. at 678.

A *pro se* plaintiff is held to less stringent standards and the court should read *pro se* complaints "to raise the strongest arguments they suggest." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Kevilly v. New York*, 410 F. Appx. 371, 374 (2d Cir. 2010). However, *pro se* plaintiffs claiming civil rights violations are not excused from the traditional rules of pleadings and "dismissal under Rule 12(b)(6) is proper if the

complaint lacks an allegation regarding an element necessary to get relief." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

**Section 1983**

Section 1983 provides that "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Paterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); see also *Cornejo v. Bell*, 529 F.3d 121, 127 (2d Cir. 2010). Therefore, there are two elements to a Section 1983 claim: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. Cnty of Westchester*, 136 F.3d 239, 245 (2d. Cir. 1998); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347,354 (E.D.N.Y. 1999) (noting that Section 1983 "furnished a cause of action for violation of federal rights created by the Constitution") (citation omitted).

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). Instead, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (*quoting Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). To make a finding of personal involvement, a Plaintiff must demonstrate that the defendant: (1) participated directly in the alleged constitutional violation, (2) after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

**DISCUSSION**

The U.S. Constitution requires that prison officials to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter and medical care." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Pretrial detainee's confinement claims are evaluated under the Due Process Clause because pretrial detainees have not been convicted of a crime and thus may not be punished in any manner- neither cruelly and unusually nor otherwise. *Darnell v. Pinerio*, 849 F.3d 17, 29 (2d. Cir. 2017). To assert a plausible Due Process claim, a pretrial detainee must allege facts to satisfy two prongs: (1) a "objective prong" showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process and (2) a "subjective prong" showing that the state actor's conduct amounts to deliberate indifference to the challenged conditions. *Id.*

Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, "the inmate must show that conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Rhodes v. Chapman*, 452 U.S. 337 (U.S. 1981); *Walker v. Schult,* 717 F.3d 119, 125 (2d Cir. 2013). When considering whether a condition is "serious," courts may consider (1) whether a reasonable doctor or patient would perceive the medical need in question as "important and worthy of comment or treatment," (2) whether the medical condition significantly affects daily activities, and (3) "the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 700 (2d. Cir. 1998).

When considering deliberate indifference, the subjective prong, a pretrial detainee must demonstrate that the state actor's conduct was intentional, or recklessly, or he should have known that the condition posed an excessive risk to health or safety. *Darnell,* 849 F.3d at 34. Deliberate indifference is more than mere negligence such that a plaintiff must demonstrate that the actor conduct was malicious with the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. Consequently, the government is obligated to provide adequate medical care to incarcerated people, and the failure to do so is a violation of the Eighth Amendment and gives rise to a deliberate indifference claim under Section 1983. *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). In order to make a claim of medical indifference, a prisoner must show that there is: (1) an objectively serious medical need and (2) subjective deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136–38 (2d Cir. 2000). The defendant must have actual notice of the prisoner's serious medical need. *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1986). The subjective standard for deliberate indifference is essentially criminal recklessness: the official must "know[] of and disregard[] an excessive risk to inmate health or

5

safety." *Farmer*, 511 U.S. at 837.  Therefore, "the defendant's belief that his conduct poses no serious harm . . . need not be sound as long as it is sincere." *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006).  Further, the charged official must be aware that there is a substantial risk of harm. *(Id.)*

Here, Plaintiff's claims concerning injuries from the use of the alleged inadequate bed fall short of the requisite standard. Non urgent injuries do not amount to serious medical condition *See Green v. Senkowksi*, 100 Fed. Appx. 45, 47 (2d. Cir. 2004). Mere cuts and redness do not constitute a serious medical condition. *See Dawes v. Coughlin*, No. 97-2395, 1998 WL 513944, at *1. Nor are there any facts to support a finding that the assignment of the bed, which caused the alleged injuries and the denial of Plaintiff's request for a second mattress, was done with malicious intent. Also missing from Plaintiff allegations are any indications that he required a second mattress due to an existing medical condition. Merely because Plaintiff was uncomfortable while sleeping does not amount to a constitutional violation. Accordingly, Plaintiff's bed related claims are denied without prejudice.

Plaintiff's claim concerning inadequate heating during his detention fails on multiple grounds. When considering allegations of inadequate heating conditions, courts considers the severity of the temperature and the duration of the improper heating condition. *Darnell*, 849 F.3d at 32. However, there is no bright line rule. ( *Id*.) Plaintiff's allegations are asserted in conclusory fashion. Plaintiff does not provide any particular dates, the actual temperature of his cell nor how long the "very cold" condition existed for. *Collins v. Fischer,* 1515 CV 103 (KMK), 2018 WL 1626528, at *2-, *7 (S.D.N.Y. Mar. 30, 2018). (the mere assertion that the inmate's cell was "very cold" is insufficient to support a finding of an allege violation). Omitted from Plaintiff's pleadings is any indication that prison officials were aware of the cold temperature and failed to act such that their conduct rises to the level of deliberate indifference. *(Id.)*   Said claim is dismissed without prejudice.

To satisfy a Fourteenth Amendment claim based on the quality of food served to a pretrial detainee, the food served must present a serious risk to the inmate's life or health and the facility must have known and done nothing about it or acted intentionally to harm the prisoner. *Walker v. Schult*, 717 F.3d 119, 125 (2d. Cir. 2013); *Darnell,* 849 F.3d at 32. Under certain circumstances, a substantial deprivation of food may be deemed a constitutional violation. *Robles v. Coughlin,* 725 F.2d 12, 15 (2d. Cir. 1983). Food served under conditions that could present a threat to one's life is a constitutional deprivation. *Id.*, 725 F. 2d at 12. (court holding that food containing dust, rocks glass, and human waste is considered things that would present a serious risk of harm when consumed and satisfied the objective prong).

In *Johnson v. Harris*, plaintiff**,** a diabetic**,** asserted he was consistently given food which would have been harmful to his health**,** and as a consequence, he was often forced to choose between endangering his health or foregoing part or all of those meals.  479 F. Supp. 333, 334–35 (S.D.N.Y. 1979). The plaintiff alleged that there were many instances in which he was unable to eat the food due to his medical condition and was forced to take insulin to maintain proper blood sugar levels. (*Id.* at 335) Accordingly, the *Johnson* Court determined that the plaintiff suffered a serious injury and suffered irreparable harm. (*Id.* at 338.)

Here, Plaintiff's allegations satisfy the objective prong. Plaintiff has alleged that he suffers from diabetes, a serious medical conditions, and that Aramark provided meals that were lacking in nutritional value and harmful to his medical condition. As a result of the inadequate meals, Plaintiff was forced to use insulin, which he has never took before. (*See* Compl. at pg. 4A.) The "continued failure to provide a diabetic inmate with a medically appropriate diet, resulting in a decline in his health" has been deemed constitutionally impermissible.  *Rush v. Fischer*, 923 F. Supp. 2d 545, 555 (S.D.N.Y. 2013), *aff'd sub nom. Rush v. Canfield,* 649 F. App'x 70 (2d Cir. 2016) (*citing Johnson*, 479 F. Supp. at 336.).

Plaintiff pleadings, however, fail to satisfy the second prong, the subjective prong. While Plaintiff identifies Aramark as the food provider at WCJ and asserts facts to suggest Aramark and WCJ were on notice of his complaints about the food and his diabetic condition,  the complaint is void of any facts to support a finding or suggestion that Aramark, its employees, and WCJ acted with malicious or deliberate intent. According, the claim is dismissed without prejudice.

To assert a Section 1983 First Amendment claim, a detainee must assert sufficient facts to  make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs. *Salhuddin*, 467 F.3d at 263. A substantial burden exists where the state actor  puts copious amounts of pressure on an adherent to modify his behavior and to violate his beliefs. *Newdow v. Peterson*, 753 F.3d 105 (2d. Cir. 2014).

An individual claiming a violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held, and in the "individual's own scheme of things, religious." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). However, a prisoner's First Amendment Rights are "balanced against the interests of prison officials charged with complex duties arising from administration of the penal system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Benjamin v. Coughlin,* 905 F.2d 571, 579 (2d. Cir. 1990). Generally, even when religious beliefs are intertwined with dietary needs, the governing standard is one of reasonableness. (*Id.* at 574). While prisoners have a right "to receive diets consistent with their

religious scruples"(*Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975)), courts are generally reluctant to grant dietary requests where the cost is prohibitive. *Benjamin v. Coughlin,* 905 F.2d at 579.

Here, Plaintiff's interference with religious freedom claims fail as a matter of law. Plaintiff was not restricted from practicing his religion. No where in his complaint does Plaintiff allege he was unable to go to service or participate in religious. His assertion is that in order to receive a more nutritious meal, given his diabetes, he would have to convert to Judaism because Kosher meals at the WCJ were healthier than those given to the general population. No where does he allege he was not permitted to continue to engage in his religious beliefs or practices. Nor does he allege that he forced to actually convert. At best, Plaintiff allegations suggest that he was told or advised that in order to receive the more nutritious Kosher meals he would have to be Jewish.

To the extent Plaintiff attempts to assert claims as against Defendants under theories of failure to properly hire, train and supervise employees, or an unconstitutional policy, Plaintiff's claim fails. A municipality, or private actor engaged in governmental action, may not be held liable under Section 1983 on a respondeat superior theory solely because the municipality employs a tortfeasor. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978). In order to hold a municipality or private actor engaged in governmental action liable, a plaintiff must demonstrate "that the municipality [or private actor] itself caused or is implicated in the constitutional violation." *Monell*, 436 U.S. at 690; *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).

To allege a plausible *Monell* claim, a plaintiff must plead the existence of an official custom or policy which subjected him to a denial of a constitutional right. See *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("In order to prevail on a claim against a municipality under [S]ection 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.").  To establish an official custom or policy, a plaintiff must allege (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *White v. Westchester Cty*., No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec. 21, 2018) (*quoting Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

For a *Monell* claim, an unofficial policy or custom, the practice, custom, or usage must be so widespread and so persistent that it has the force of law. *Goode v. Westchester Cty.*, No. 18-cv-2963 (NSR), 2019 WL 2250278, at *3 (S.D.N.Y. May 24, 2019). Where municipal liability is based on a failure to train, the inadequate training must "reflect[] deliberate indifference to . . . constitutional rights." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). To prove deliberate indifference, a plaintiff must properly plead (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (*citing Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)).

Plaintiff alleges that the Defendants failed to properly hire, train and supervise its subordinates to ensure food was served and possibly medical services were provided in proper fashion. Such statement is nothing more than a conclusory allegation, which is plainly "insufficient to state a *Monell* claim." *Davis v. City of New York*, No. 07 Civ. 1395 (RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008). Allegations lacking in specificity are not enough to support a municipal policy or that a custom exists. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). Given the deficiency in the pleadings, the *Monell* claim must be dismissed without prejudice to renew.

There is no constitutional right to an inmate grievance program, and allegations that the procedures are in adequate do not give rise to a Section §1983 claim. *Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 434 (S.D.N.Y. 2012) citing *Johnson v. Enu*, No. 08–CV–158, 2011 WL 3439179, at *13 (N.D.N.Y. July 13, 2011); see also *Banks v. Annuci*, 48 F. Supp. 3d 394, 412 (N.D.N.Y. 2014); *Cancel v. Gord*, No. 00 CIV 2042, 2001 WL 303713 at *3 (S.D.N.Y. March 29, 2001) (holding that where a prisoner alleged that a prison official did not process an inmate's grievance was not a constitutional violation because inmate procedures are not required under the Constitution). The Court further notes that Plaintiff does not provide any particularity concerning the alleged deficiency and whether he attempted to avail himself of the procedure. Accordingly, the claim is dismissed with prejudice.

To demonstrate that a conspiracy exists in a Section 1983 violation, a plaintiff must assert facts that support a finding that two or more entities acted in concert to commit an unconstitutional act. 42 U.S.C.A. §1983 (1996). In essence , a plaintiff's allegations must demonstrate: 1) the existence of an agreement between a state actors and a private entity, 2) that they acted in concert to inflict an unconstitutional injury, and 3) the existence of an overt act in furtherance of that goal causing damages.

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Although "conspiracies are by their very nature secretive operations and can hardy be proven by direct evidence" (*Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir.1994), mere speculation  or conclusory statements of the existence of a conspiracy is insufficient. Here, Plaintiff's conspiracy allegation can only described as conclusory. Accordingly, the conspiracy claim is dismissed without prejudice.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."U.S. Const. Amend. VI; *US v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). An element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him.  (*Id.*) Plaintiff's allegations, however, do not amount to a denial of counsel. Plaintiff's sparse allegations are conclusory and suggest that he was unable to financially retain his counsel of choice. There being no constitutional violation, the claim must be dismissed.

The Constitution guarantees detained individuals meaningful access to courts, which, in the case of *pro se* inmate, includes access to a facility's law library, or legal resources . *See Little v. Mun. Corp*., 51 F. Supp. 3d 473, 497 (S.D.N.Y. 2014) (internal citations omitted). "Law library and legal assistance programs do not represent constitutional rights in and of themselves, but only the means to ensure "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts," and thus an inmate must demonstrate "actual injury" in order to have standing. *Id.* quoting *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001). Here, Plaintiff's allegations are sparse, conclusory and fail to allege any injury. Accordingly, the claim is dismissed.

Lastly, courts in this district have held that inmates have no constitutional right to purchase items from the prison commissary. *Mitchell v. City of New York*, No. 10 Civ. 4121 (PKC), 2011 WL 1899718, at *2 (S.D.N.Y. May 13, 2011). *See Davis v. Shaw*, No. 08 Civ. 364 (NRB), 2009 WL 1490609, at *1 (S.D.N.Y. May 20, 2009) (holding that a pre-trial detainee claiming the commissary pricing was too high did not have a constitutional right to use of the prison commissary and therefore there was no constitutional violation). Plaintiff's claim concerning the high price of food at the commissary is dismissed with prejudice on the basis that no constitutional violation has been asserted.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Complaint pursuant to Rule 12(b)(6) are GRANTED. Plaintiff shall have until October 31, 2020 to file an Amended Complaint consistent with this Opinion and Order. An Amended Complaint form is attached to this Order.  Failure to timely file an Amended Complaint may result in the dismissal of the existing complaint with prejudice. In the event Plaintiff files an Amended Complaint, the remaining Defendant(s) shall have 21 days from date of filing of the Amended Complaint to file an answer or otherwise respond.  The Clerk of Court is respectfully directed to terminate the motions at ECF No. 30 and 37, to mail a copy of this Opinion and Order to Plaintiff at the last known address listed on the docket, and to show proof of service on the docket.

Dated: September 14, 2020
    White Plains, New York

SO ORDERED:

HON. NELSON S. ROMÁN
United States District Judge

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____
Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____
(Include case number if one has been
assigned)

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes     ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

Rev. 5/20/16

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____
First Name                     Middle Initial                 Last Name

_____
State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____
Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____
Current Place of Detention

_____
Institutional Address

_____
County, City                          State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

Page 2

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                     Last Name                          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                              State                      Zip Code

Defendant 2:

First Name                     Last Name                          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                              State                      Zip Code

Defendant 3:

First Name                     Last Name                          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                              State                      Zip Code

Defendant 4:

First Name                     Last Name                          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                              State                      Zip Code

## V.      STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6